IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Docket No.  0423 3:19CR00014-001 |
| | ) | |
| | ) | |
| DANIEL MCMAHON | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

The Defendant, Daniel McMahon ("Mr. McMahon"), through his appointed counsel, submits this Sentencing Memorandum for the sentencing scheduled for Monday, August 31, 2020. Mr. McMahon has pled guilty, pursuant to a Superseding Information and written plea agreement, to two offenses: bias-motivated interference with a candidate for elective office, pursuant to 18 U.S.C. § 245(b)(4), a misdemeanor, and cyberstalking, pursuant to 18 U.S.C. § 2261A(2), a felony. Smith's guideline imprisonment range is 33 to 41 months.

This Court should sentence Mr. McMahon to an 18-month term of imprisonment. This number is below the low end of the guideline range, but it is supported by strong evidence of mitigation, which is outlined below in this memorandum. This sentence is sufficient to achieve the goals of sentencing in this case because (1) Mr. McMahon has a very low criminal history score; (2) Mr. McMahon has expressed remorse and acceptance of responsibility for his actions; (3) Mr. McMahon has an untreated mental health diagnosis and a significant alcohol addiction, both of which contributed significantly to his behavior; and (4) Mr. McMahon's poor social adjustment resulted in abuse and trauma, including bullying and isolation, that made him highly susceptible to being drawn into a group with extremist views.

## ARGUMENT

### A. Sentencing Authorities

In sentencing Mr. McMahon, this Court should consider the factors set forth in 18 U.S.C. §3553(a). A district court should not determine the appropriate sentence by the mechanistic application of a given sentence to a given category of crime. Rather, a sentencing court has the duty to ensure the sentence imposed is tailored to the individual before it. The belief no longer prevails that every offense in a like legal category calls for an identical punishment without regard to the past life and habits of a particular offender. *Williams v. New York*, 337 U.S. 241, 247 (1949); *see also United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009). A sentence that focuses only on the offense and not the individual characteristics of the defendant or the other §3553(a) factors is unreasonable. *United States v. Olhovsky*, 562 F.3d 530, 549 (3d Cir. 2009). Indeed, in the watershed decision of *United States v. Booker*, 543 U.S. 220 (2005), the question of whether prison is necessary for a particular individual returns to a place of priority in the sentencing decision. A court must impose the minimum term necessary to comply with the goals of sentencing, which are just punishment, deterrence, protection of the public, and rehabilitation of the defendant. It must do so while taking into consideration all of the factors set forth in 18 U.S.C. §3553(a). *See* 18 U.S.C. §3553 (a)(2).

The Sentencing Guidelines are merely "the starting point and the initial benchmark" for the Court's sentencing determination. *Gall v. United States*, 522 U.S. 38, 49 (2007). The sentencing court may not presume that the Guidelines range is reasonable. *United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007) (citing *Gall*, 552 U.S. at 50). Further, *Booker* permits the Court to tailor the sentence in light of other statutory concerns. *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (citing *Gall*, 552 U.S. at 46, and quoting *Booker*, 543 U.S. at 245-46).

As set forth below, after considering the Sentencing Guidelines and the statutory sentencing factors, a sentence of 18 months is tailored to Mr. McMahon's particular circumstances and satisfies the goals of sentencing.

**B.    Sentencing Guidelines and Policy Statements.  18 U.S.C. §3553(a)(4), (5)**

Mr. McMahon agrees with the objections that were previously filed by the Government and with the amendments that have been made to reflect those changes.  Those amendments did not change the offense level or criminal history category.  The revised PSR correctly calculates that Mr. McMahon has a total offense level of 20 and a criminal history category of I.  Mr. McMahon's low criminal history category score is noteworthy and should be taken into great consideration by this Court in sentencing him.  The PSR calculation yields a guideline range of 33-41 months.

**C.    That Nature and Circumstances of the Offense and McMahon's History and Characteristics.  18 U.S.C. §3553(a)(1)**

Mr. McMahon was initially named in a 4-count superseding indictment centered around his online activity during the course of 2019.  Mr. McMahon's online activity during that time reflected an infatuation with white nationalist ideology, with a particular focus on the events that occurred in Charlottesville on August 12, 2017, and an obsession with compiling and publishing information about those who he deemed to be associated with the Antifa movement.  Mr. McMahon pled guilty, pursuant to a 2-count superseding information and written plea agreement, to one misdemeanor and one felony related to his online activity.  Specifically, those crimes relate to his online actions regarding an individual running for elective office in Charlottesville and his online actions/interactions with an individual in another state who was involved in countering pro-Confederate/White-Nationalist protests.  Mr. McMahon's actions in this case all took place while he was residing at the family home in Florida.

It is first important to note that Mr. McMahon has taken full responsibility for his crimes and has expressed remorse. He understands that his conduct was, not just an exercise of bad judgment, but was reprehensible in both its scope and impact. PSR ¶21. *Mr. McMahon never intended to physically harm anyone.* While Mr. McMahon's online personas reflected boastful and bombastic language that indicated that he might take violent action, Mr. McMahon's home situation was such that it would have been extremely difficult, if not impossible, for him to find the manner and means to physically harm the victims in this case. Mr. McMahon's lack of a criminal record supports this. ███████████████

███████████████

While he did not realize the impact of his words at the time, he certainly does now.

Mr. McMahon was not born with the ideals of a white nationalist ideology. As is true in most cases, in order to fully understand Mr. McMahon, the origins of his beliefs, and the root causes that have contributed to his behavior, it is necessary for this Court to examine all aspects of his life. In short, this sentencing memorandum attempts to answer the question that this Court should examine closely, namely, "How did we get here?"

Mr. McMahon's behavior in this case is significantly intertwined with his untreated mental health diagnosis and his reliance on alcohol as a mechanism of self-medication.

███████████████

███████████████

███████████████

███████████████ His untreated disorder ran parallel to a negative course in his life throughout middle school and high school, a time that is the most crucial for social and emotional development, especially in teenage boys. During those years,

both Mr. McMahon and his parents have noted the isolation and the severe bullying that he experienced. ███████████████ The bullying occurred on an almost daily basis, as his peers routinely threw his belongings in the garbage and pushed, spat on and punched him. ███████████

After high school, Mr. McMahon attended some college. He was unable to progress forward with any meaningful education or keep a steady job. Not surprisingly, without any treatment for his condition or any mechanism for learning how to socialize, he began to rely on alcohol in order to become a more social person. He parroted a style that he saw in the bar scene in learning how to "trash talk" and in adopting his bombastic style of speaking. While his daily alcohol use spiraled out of control, he regressed to further isolation. There he found the one place where he could "socialize" without the many difficulties he had faced in the outside world – the internet. ███████████████

At the same time, while he was in his mid-20s, Mr. McMahon decided to become more politically active. Without a meaningful job or any mainstream social outlets, his political activism soon turned into an obsession. This obsessive behavior is a key characteristic of his mental health disorder. ███████████████████████████████

███████████████████████████████████████████ It is within this framework that Mr. McMahon was highly susceptible to being brought into the fold of an extremist group. In the aftermath of the Unite the Right rally in Charlottesville, which was also a focal point for Mr. McMahon, a 2015 study commissioned by the Department of Justice examined what provoked people to join racist, violent, or far-right hate groups. Not surprisingly, research indicated that most people affiliate themselves with far-right ideologies in order to gain a sense of belonging

and a sense of power. Adolescent maladjustment is a significant contributing factor and makes a person more vulnerable to recruitment adolescence and young adulthood. There is a need to belong, to have friends and to be socially accepted. *See Addicted to Hate: Understanding the Motives of Former White Supremacists*, RTI International, 2015.

Through his online personas, Mr. McMahon found the social acceptance that he had long-desired. He garnered accolades from others in the white nationalist community by conducting obsessive background research on individuals who he and others believed were associated with Antifa. Through this role as an "Antifa hunter", and encouraged by others, he saw himself as an "investigative journalist." He would "routinely attempt to notify authorities when he observed violence and was able to identify the individuals who he believed were perpetrators." ▬▬▬ He believed himself to be famous, describing himself as an "internet celebrity" with "12,000 fans online." ▬▬▬ When members of Antifa began to target Mr. McMahon and his family directly, which his parents corroborate, this only fueled Mr. McMahon's reckless behavior. ▬▬▬

Mr. McMahon entered the lives of the victims in this case because he perceived that they were associated with a group, Antifa, that had targeted himself and his family. He truly believed, however wrong at the time, that his role was to engage with them for his greater cause, a cause that had become an obsession. His obsessive focus, driven by his mental health disorder, resulted in his extremely bad behavior regarding the daughter of one of the victims. ▬▬▬ ▬▬▬ While some might argue this is evidence of malice or extreme violent intent, for Mr. McMahon, he just could not connect those dots at the time. He did not see the harm in what he was doing because he did not have the resources, tools or guidance to help him see that harm, or avoid it altogether.

███████████████

Mr. McMahon's actions and beliefs are directly linked to his untreated mental health disorder and his lack of social stability. ███████████████ To make matters worse, during this time when he was spending 6-7 hours a day on the internet, he was also severely abusing alcohol. His parents noted only seeing him on the "night shift" and that when he was highly intoxicated, he was a totally different person, from "Dr. Jekyll to Mr. Hyde." ███████████████

**D.** <u>The Need for the Sentence to Reflect the Seriousness of the Offense, Punish the Defendant, Deter Criminal Conduct, and Protect the Public. 18 U.S.C. §3553(a)(2)</u>

███████████████



Mr. McMahon needs treatment and not a further long-term period of incarceration. Because of his highly susceptible personality, any significant period of incarceration in the federal prison system is likely to result in a *reinforcement* of his beliefs, not a deprogramming. He will be an easy target for white supremacist and white nationalist groups in the prison system. What will serve society in the long run, as well as Mr. McMahon, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ That, in conjunction with substance abuse treatment and vocational training, and Mr. McMahon will, for the first time in his life, be in a position to succeed within a community.

### E. Avoiding Unwarranted Sentencing Disparities. 18 U.S.C. §3553(a)(6)

There are no co-defendants in this case.

## CONCLUSION

For the reasons set forth above, this Court should sentence Mr. McMahon to a period of incarceration of 18 months. He should be given credit for the time he has served continuously since September 18, 2019, when he was taken into custody for his initial appearance in the Middle District of Florida. Attached to this memorandum as exhibits are 1) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; 2) Exhibit B – Character letters provided by Mr. McMahon's family. If this Court does sentence Mr. McMahon to a longer term of incarceration, he requests that it be for a term and in a facility that will provide mental health and substance abuse treatment services. He could benefit greatly from the RDAP program.

As with "drunk driving on the internet", and drunk driving in life, there can be victims whose lives are severely affected and serious consequences for those who engage in that type of behavior. The fact that Mr. McMahon has some realization of that now, not having had the benefit of any treatment to this point, is a promising sign that he can be rehabilitated. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mr. McMahon made bad choices, but it is clear that he did not get the help and support he needed in his formative years, both from those closest to him and from humanity as a whole. He wanted to fit in and be accepted in a stable community, but instead of being picked up by those around him, he was let down. He deserves an opportunity to show that, with the right treatment and services, he can leave the stereotype behind.

Respectfully submitted,
DANIEL MCMAHON
By counsel

/s/ Jessica F. Phillips
Jessica F. Phillips (VSB #65953)
Royer Caramanis PLC
200-C Garrett Street
Charlottesville, VA 22902
(434) 260-8767 (telephone)
(434) 710-4061 (facsimile)
jphillips@rc.law

CERTIFICATE OF SERVICE

I hereby certify that on August 21st, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Jessica F. Phillips
Jessica F. Phillips (VSB #65953)
Royer Caramanis PLC
200-C Garrett Street
Charlottesville, VA 22902
(434) 260-8767 (telephone)
(434) 710-4061 (facsimile)
jphillips@rc.law