UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                                                  )<br>)<br>DANIEL MCMAHON,                         )<br>        *Defendant*                              )<br>                                                          ) | Case No. 3:19-cr-00014 |

**Defendant's Motion for Early Termination of Supervised Release**

COMES NOW, Daniel McMahon, by counsel and files his motion for early termination of supervised release pursuant to 18 U.S.C. § 3583(e)(1). Mr. McMahon began serving his three-year term of supervised release on April 20, 2022. The completion date of his full term of supervised release is April 19, 2025. He is requesting his supervised release be terminated early so that he can apply for employment on the internet and participate in higher education. His current conditions of supervise release prevent him from using a computer, cellular phone or other internet-capable device without prior approval of the court, upon consideration with the probation officer, and, if permission is granted, he must participate in computer monitoring program. (ECF 73).

Before determining whether early termination of a term of supervised release is warranted by the conduct of the defendant and the interest of justice, § 3583(e)(1) requires that the courts consider the sentencing factors laid out in 18 U.S.C. § 3553. Because Mr. McMahon's conduct following his release from his term of incarceration

satisfies the sentencing factors and interest of justice, this Court should grant his motion for early termination of supervised release.

## Facts

Mr. McMahon began his term of supervised on April 20, 2022, and complied with the conditions of supervised release. When he was released from prison, Mr. McMahon moved back to the Middle District of Florida and lives with his parents. According to his supervising probation officer, Carlos Silva, he has been law abiding and maintained compliance. (Exhibit A). More specifically, Mr. McMahon has maintained regular contact with his probation officer, provided clean drug screens and participated in treatment. He has also fulfilled his financial obligations.

## Argument

This Court may "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). When considering a motion for early termination of supervised release, this Court must consider the following factors set forth in 18 U.S.C. § 3553(a):

> (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) deterrence of criminal conduct; (3) protection of the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment; (5) the applicable sentencing guideline range for the offense and pertinent policy statements issued by the U.S. Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense.

The court is "encouraged to [grant early termination of supervised release] in appropriate cases." U.S.S.G. § 5D1.2, ct. 5. Without specifically referencing the Section 3553 sentencing factors, the Fourth Circuit has similarly reinforced that the statute provides a "mandate to consider both [the supervisee's] conduct and the interest of justice. *United States v. Pregent*, 190 F.3d 279, 283 (4th Cir. 1999).

The primary purpose of supervised release is to support a defendant's transition into the community after the service of a prison term and provide rehabilitation and supervision after release. *United States v. Johnson*, 529 U.S. 694, 709 (2000). The Judicial Conference endorsed early termination in 2003, if the offender had satisfied the conditions of supervision, had successfully reintegrated into the community, and did not pose a foreseeable risk to public safety generally or to any individual third party. Baber and Johnson, "Early Termination of Supervision: No Compromise to Community Safety" (Probation Journal, Sept. 24, 2013).[1] The study showed that three years after being released from supervision only 10.2 percent of early termination offenders had been rearrested, while 19.2 percent of full-term offenders were rearrested. The early termination of low-risk offenders allows districts to devote more resources to supervision of offenders who are a greater risk to society. The report looked at cases closed in FY 2008, then tracked them for three years after supervision terms ended to see whether new crimes were committed. There were 15, 266 cases of offenders with terms of supervised release following imprisonment and

---

[1] Available at: https://www.uscourts.gov/news/2013/09/24/early-termination-supervision-cost-effective-and-safe.

probation cases closed in fiscal 2008, of which 3,814 were for early termination and 11,454 were for successful expiration of a term of supervised release.

While Mr. McMahon was convicted of a serious offense, he entered a plea of guilty, and accepted responsibility. He expressed remorse for his conduct, and his post-offense rehabilitation has been exceptional. *United States v. Pepper*, 562 U.S. 476 (2011). Since his release, Mr. McMahon has participated in the following treatment: Cognitive Behavioral Therapy for his autism spectrum disorder at Dr. Monica Lake & Associates of Riverview, Florida; Alcohol Use Behavioral Therapy at Phoenix House-Heartwood Campus in Brandon, Florida; and Behavior Modification Treatment at Bay Area Behavioral Services in Brandon, Florida. He is a "neurodiverse" individual, who has successfully reintegrated into the "neurotypical" community, making new friends, maintaining a stable residence, and being engaged in seeking employment and reintegrating into the community. He has joined a gym and is seeing old friends. He has also served in the role of caregiver when his father was diagnosed with bilateral emphysema and his mother with serious cardiovascular disease. He takes his parents to and from their doctor's appointments. His mother is now disabled.

Continued supervision is at odds with several of the § 3553 factors. In over two years of supervised release, Mr. McMahon has made great self-improvement and is equipped with the tools to self-supervise. Beyond this, continued supervision is at odds with the goals of deterrence, protection of the public, and access to rehabilitation and vocational programs. These three key § 3553 factors are inherent in the

4

supervised release framework and all are generally aimed at self-improvement and prevention of criminal behavior. Continued supervision poses obstacles to Mr. McMahon's rehabilitative journey by preventing him from achieving meaningful and financial success and impeding his ability to seek gainful employment. Mr. McMahon has been working with Javier Ballesteros, a certified employment specialist who works with the Vocational Rehabilitation and Florida Department of Education, who has written a letter on Mr. Mahon's behalf. (Exhibit B).

    Mr. McMahon's terms of supervision affect the kinds of employment that may be feasible for him to obtain. He has an education in IT and possesses a keen intellect. Yet, Mr. McMahon is barred from possessing a computer or using a computer in connection with employment without the express authorization of the court and without the use of the Computer Monitoring Program. (ECF 73). While being a convicted felon will always be an obstacle for Mr. McMahon to obtain employment, his continued supervision condition poses an extra hurdle that makes finding and obtaining employment almost impossible. Almost all employers require that a person submit an application online, and many jobs are filled quickly. Since Mr. McMahon cannot access the internet to look for employment, he is dependent on Mr. Ballesteros. Mr. Ballesteros will look for jobs for Mr. McMahon and then call him and/or email Mr. McMahon's father with information concerning an opening. By the time Mr. McMahon gets the message, often the position has been filled. In addition, almost every job now requires that employees access computers. Mr. Ballesteros explained to counsel that a warehouse position requires employees to access computers and/or

5

tablets to log inventory. As Mr. Ballesteros states in his letter, Mr. McMahon is "reliable, highly motivated, hardworking, friendly and polite." "His skills are well-honed, and he is ready to take on higher paying roles that leverage his computer and internet expertise." (Exhibit B). Recently, Mr. McMahon received an offer to work using AutoCAD and Blender software, but his current conditions prevent him from accepting this position. Finally, his current restrictions prevent Mr. McMahon from pursuing further education. Mr. McMahon would like to finish his studies at the University of South Florida's School of Engineering, Department of Computer Science but he cannot do this without being able to access and possess a computer.

Mr. McMahon's supervising probation officer in the Middle District to of Florida, Carlos Silva, acknowledges that Mr. McMahon has maintained compliance while on supervised release. (Exhibit A). However, he expressed concern about Mr. McMahon's "lack of employment stability and lack of pro-social activities." (*Id.*) However, the supervised release condition preventing access and possession of a computer has contributed to Mr. McMahon's lack of employment stability. It is not that Mr. McMahon does not want to work, it is that his current restrictions prevent him from looking for work and applying for positions online and his current restrictions prevent him from accepting most positions that are available.

Mr. McMahon's history and characteristics also support early termination. He has been employed and continues to seek employment, maintained a stable residence, and has not incurred any new law violations. He has complied with all the conditions of supervised release. He is a caretaker for his infirm parents and has fully

6

transitioned back into the community. Since being on supervised release, he has continued to be in full compliance. Mr. McMahon does not pose a danger to the community.

Mr. McMahon is asking the Court to allow him to be released nine months early from his full three-year term of supervision so that he can obtain employment and pursue his education. None of the factors listed in 18 U.S.C. §§ 3353 and 3583 necessitate the continuation of supervised release. Early termination of supervised release is in the interest of justice.

Respectfully submitted,<br>
By:  /s/ Mary E. Maguire<br>
Counsel

Mary E. Maguire
Va. Bar No. 42505
Federal Public Defender
Western District of Virginia
401 E. Market Street, Ste. 106
Charlottesville. Va 22902
(540) 777-0895
Mary_Maguire@fd.org

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

/s/ Mary E. Maguire
Mary E. Maguire