UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                                                     ) | Case No. 3:19-cr-00014 |
| ) | |
| DANIEL MCMAHON,                      ) | |
|         *Defendant*              ) | |
| ) | |

**Motion to Remove Condition of Supervised Release
that Prohibits Use of the Internet Without Court Approval**

COMES NOW, Daniel McMahon, by counsel and files his motion for relief from the condition of his supervised release that prohibits him for using the internet without express permission from the court, following consultation with probation. Mr. McMahon began serving his three-year term of supervised release on April 20, 2022. His current conditions of supervised release prevent him from using a computer, cellular phone or other internet-capable device without prior approval of the court, upon consideration with the probation officer, and, if permission is granted, he must participate in the computer monitoring program. ECF 73.

Since his release, McMahon has remained of good behavior and, except for finding employment, maintained compliance with supervision. He has participated in numerous rehabilitative programs, kept up with his mental health and sought to care for his elderly, infirm parents. However, the condition prohibiting using computers and internet enabled devices is a serious obstacle to a key rehabilitative step: finding gainful employment and/or continuing with further education.

The stringent condition prohibiting computer and internet usage is not reasonably tailored to Mr. McMahon's offense of conviction or to his circumstances at the time of his sentencing. As an overly broad restriction on Mr. McMahon's First Amendment rights, it was an impermissible condition of supervision at the time of its imposition. *See Packingham v. North Carolina*, 582 U.S. 98, 108 (2017). Mr. McMahon concedes that he did not raise this objection at sentencing. Nevertheless, conditions may be challenged by a motion to modify the conditions of supervised release where there have been post-sentencing changes of law or fact. *United States v. McLeod*, 972 F.3d 637, 643-644 (4th Cir. 2020); *United States v. Morris*, 37 F.4th 971, 977 (4th Cir. 2022).

The law has changed since Mr. McMahon's sentencing in 2020. Since Mr. McMahon's sentencing, the Fourth Circuit has issued *United States v. Ellis*, 984 F.3d 1092, 1103-1104 (2021) and *United States v. Hamilton*, 986 F.3d 413 (4th Cir. 2021). As discussed *infra*, the import of these two cases is that the near complete internet ban imposed on Mr. McMahon is a greater than permitted deprivation of Mr. McMahon's First Amendment right. In other words, the anti-computer and internet condition is broader than is permitted by 18 USC § 3583(d) in this instance. Finally, the Court retains the ability to modify his conditions of release after consideration of the criteria set forth in 18 USC § 3583(e). These factors support removal of the current *de facto* prohibition on computer and internet usage.

As a result, Mr. McMahon moves the Court to remove his current restrictions on computer and internet capable devices as a greater deprivation of his First Amendment rights than is necessary to attain the objectives of 18 USC § 3583(d).

## FACTS

As described in Mr. McMahon's previous motion to terminate his supervised release, Mr. McMahon has made remarkable progress since his release from prison. ECF 77 at 2. To reiterate some of his impressive achievements, Mr. McMahon has participated in the following treatment since his release: Cognitive Behavioral Therapy for his autism spectrum disorder at Dr. Monica Lake & Associates of Riverview, Florida; Alcohol Use Behavioral Therapy at Phoenix House-Heartwood Campus in Brandon, Florida; and Behavior Modification Treatment at Bay Area Behavioral Services in Brandon, Florida. He is a "neurodiverse" individual, who has successfully reintegrated into the "neurotypical" community, making new friends, maintaining a stable residence, and being engaged in seeking employment and reintegrating into the community. He has joined a gym and is seeing old friends. He has also served in the role of caregiver when his father was diagnosed with bilateral emphysema and his mother who has serious cardiovascular disease. He takes his parents to and from their doctor's appointments. His mother is disabled.

Mr. McMahon has been working with Javier Ballesteros, a certified employment specialist who works with Vocational Rehabilitation and the Florida Department of Education, who has written a letter on Mr. Mahon's behalf. ECF 77 at 5, Exhibit B. Mr. McMahon's terms of supervision affects the kinds of employment

3

that may be feasible for him to obtain. He has an education in IT and possesses a keen intellect. Yet, Mr. McMahon is barred from possessing a computer or using a computer in connection with employment without the express authorization of the court and without the use of the Computer Monitoring Program. (ECF 73). While being a convicted felon will always be an obstacle for Mr. McMahon to obtain employment, this continued supervision condition poses an extra hurdle that makes finding and obtaining employment almost impossible. Almost all employers require that a person submit an application online, and many jobs are filled quickly. Mr. McMahon has been rejected from opportunity after opportunity. Attached as Exhibit A are more than 20 rejection letters that Mr. McMahon has received in his job search.

Since Mr. McMahon cannot access the internet to look for employment, he is dependent on Mr. Ballesteros. Mr. Ballesteros will look for jobs for Mr. McMahon and then call him and/or email Mr. McMahon's father with information concerning an opening. By the time Mr. McMahon gets the message, often the position has been filled. In addition, almost every job now requires that employees access computers. Mr. Ballesteros explained to counsel that a warehouse position requires employees to access computers and/or tablets to log inventory. As Mr. Ballesteros states in his letter, Mr. McMahon is "reliable, highly motivated, hardworking, friendly and polite." ECF 77, at Exhibit B. "His skills are well-honed, and he is ready to take on higher paying roles that leverage his computer and internet expertise." *Id*. At the time of the filing of Mr. McMahon's motion for early termination of supervision, Mr. McMahon

4

had recently received an offer to work using AutoCAD and Blender software. Unfortunately, his current conditions prevented him from accepting that position.

More recently, Mr. Ballesteros reports that Mr. McMahon has struggled on since that time to find employment. But even retail and warehouse jobs require some computer or internet usage. Options such as working at a Publix, as a delivery driver and even in construction all require the use of tablets or other computer technology. All of which remain forbidden to Mr. McMahon.

Finally, his current restrictions prevent Mr. McMahon from pursuing further education. Mr. McMahon would like to finish his studies at the University of South Florida's School of Engineering, Department of Computer Science but he cannot do this without being able to access and possess a computer.

## ARGUMENT

### I. The Condition Prohibiting Computer and Internet Usage is Greater than is Reasonably Necessary to Achieve the Statutory Objectives

A. <u>Mr. McMahon's Constitutional challenge to the internet-related conditions may be challenged by this motion for modification under 18 USC § 3583.</u>

Mr. McMahon is not barred from bringing this challenge to the conditions of his supervised release by 18 USC § 3583(e). While challenges relying on factual and legal circumstances existing at the time of sentencing are not available through § 3583(e), challenges may be based on "new, unforeseen, or changed legal or factual circumstances, including those that go to the legality of a sentence." *McLeod*, 972 F.3d at 643-644.

5

The law has changed since the date of Mr. McMahon's sentencing hearing on August 30, 2020. Prior to Mr. McMahon's sentencing, the Supreme Court decided *Packingham v. North Carolina*, 582 U.S. 98 (2017). In *Packingham*, a sweeping state law that prohibited sex offenders from using social media violated the First Amendment. *Id.* at 105-08. The unprecedented scope of the law's infringement on First Amendment speech was not narrowly tailored to a significant government interest. *Id.* Mr. McMahon does not appear to have objected to this condition of supervised release at the time of his sentencing in 2020, but this motion is not based on *Packingham* alone.

Following *Packingham*, in *Ellis*, a 2021 case, the Fourth Circuit applied *Packingham* in the supervised release context. *Ellis*, 984 F.3d at 1102-1103. There, the Fourth Circuit invalidated an internet access ban as a condition of supervised release. *Id.* The court found the condition did not reasonably relate to the defendant's offenses and was a larger than necessary imposition on the defendant's liberty in violation of 18 USC § 3583(d). *Id.* That same year, the Fourth Circuit decided *United States v. Hamilton*, 986 F.3d 413 (4th Cir. 2021), in which it expressed that total internet bans were typically too broad in non-contact child pornography cases and other similar online offenses. *Id.* at 422 (citations omitted).

The combination of these cases led the Fourth Circuit to conclude in *United States v. Morris*, 37 F.4th 971, 976-977 (4th Cir. 2022) that a defendant had sufficiently new grounds to challenge his internet restriction. The *Morris* court surveyed the changes to the law that resulted from these three cases. *Id.* Relevant for

6

our purposes, *Ellis* "established that non-contact sex offenses can't justify an internet ban absent a connection between the ban and the offender's conduct." *Id.* at 977. Meanwhile, *Hamilton* "clarified that using the internet to locate victims, coupled with evidence of a contact offense (even without a conviction) may support an internet ban."

Mr. McMahon's sentencing occurred in August of 2020. Mr. McMahon did not have *Ellis* nor *Hamilton* on which to base an objection. These are new developments in the law. Mr. McMahon is entitled to raise a challenge to the internet ban in his case under 18 USC § 3583(e) using these cases as a basis.

  B. <u>The condition imposes a greater deprivation of Mr. McMahon's First Amendment rights than is reasonably necessary.</u>

The ban against using the internet without specific permission from the Court violates the First Amendment and 18 USC § 3583(d). The Fourth Circuit has found that a total ban on internet usage sweeps too broadly in non-contact child pornography cases and similar criminal internet conduct to be permissible under 18 USC § 3583(d). *Hamilton*, 986 F.3d at 422 (citations omitted); *United States v. Arce*, 49 F.4th 382, 396 (4th Cir. 2022). This accords with the enormous deprivation of speech that such bans constitute. *Ellis*, 984 F.3d at 1103-05.

Mr. McMahon's conditions of supervised release impose a complete ban on his usage of the internet and information technology without prior court approval. This is despite the nature of Mr. McMahon's offense – which involved internet communication but no physical contact. Mr. McMahon has a First Amendment right to the public forum of the internet and to use the internet for important life activities

like finding a job. *See, e.g., United States v. Eaglin,* 913 F.3d 88, 96 (2d Cir. 2019). The expansive ban imposed on him is far broader than is reasonably necessary to obtain the objectives of supervised release. *Ellis*, 984 F.3d at 1104. The wide scope of the ban violates Mr. McMahon's First Amendment rights and the Fourth Circuit's precedent in *Ellis* and *Hamilton*. In consequence, the condition foreclosing the use of computers and the internet should be stricken.

**II.     The Condition Banning Internet Usage Warrants Removal Pursuant to 18 USC 3583(e).**

The computer and internet ban no longer serve a valid purpose even if the Court concludes it was appropriate at its inception. The Court has the power to modify or reduce the conditions of supervised release, "pursuant to provisions applicable to the initial setting of the terms and conditions of post-release supervision[.]" 18 USC § 3583(e)(3). Setting the initial terms of supervision requires the Court to determine whether a condition is (1) reasonably related to the nature and circumstances of the offense and characteristics of the defendant, (2) affords adequate deterrence of criminal conduct, (3) protects the public from the crimes of the defendant and (4) provides the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *Id*; 18 USC 3553(a). Additionally, a condition must involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth in the section. 18 USC § 3583(d). Lastly, the condition must align with the policy statements contained in the United States Sentencing Guidelines. *Id*.

8

In the context of broad internet bans, the Fourth Circuit has looked to three criteria to determine whether a ban is reasonably necessary without involving a greater deprivation of liberty than necessary. *Hamilton*, 986 F.3d at 422. Those factors are again whether: "'(1) the defendant used the internet in the underlying offense; (2) the defendant had a history of improperly using the internet to engage in illegal conduct; or (3) particular and identifiable characteristics of the defendant suggested that such a restriction was warranted.'" *Id*. The ban here is inappropriate under each of these elements.

First, although the underlying offense and related conduct does involve using the internet, Mr. McMahon never carried out a threat or even had any kind of in-person contact with the subject of his threats. Indeed, Mr. McMahon resided in the state of Florida at the time he made threats to a person in Charlottesville. He never traveled to or intended to travel to Charlottesville or even Virginia. This case presents a far cry from the facts of *Hamilton*, for example, where the defendant used the internet to physically meet and sexually assault his victim. *Hamilton*, 986 F.3d at 415-16.

Secondly, Mr. McMahon certainly has no prior convictions for committing crimes through the internet or using computers. In fact, Mr. McMahon had no criminal record at all prior to these offenses. The government alleged in its sentencing memorandum that it discovered evidence of cyberstalking, threats and hacking related to other victims during its investigation of this case. ECF 58 at 16-17. Mr. McMahon seems to have become wrapped up in an online fantasy. *See* ECF 61 at 5-

9

7. Much of this was driven by mental health. *Id*. Importantly, he has now received significant mental health treatment. Since beginning treatment, Mr. McMahon has shown an ability to self-regulate by complying with supervision – including the computer and internet ban. It is this recent history of compliance since treatment that is most relevant period for this analysis.

Similarly, the truly exceptional progress Mr. McMahon has made in the two-years he has been on supervised release proves that the restrictions are not called for under his current "particular and identifiable characteristics." He has completed programs targeted directly at his mental health and substance abuse issues. He helps to care for his elderly, sick parents. He is actively seeking to better himself even further by attempting to obtain employment and pursue his education. Mr. McMahon is ready to re-join the online community in the same way that he has successfully rejoined the physical community. While Mr. McMahon was convicted of a serious offense, he entered a plea of guilty, and accepted responsibility. He expressed remorse for his conduct, and his post-offense rehabilitation has been exceptional. *United States v. Pepper*, 562 U.S. 476 (2011). The 41-month prison sentence and three years of supervised release is sufficient to deter others from engaging in similar conduct. The supervision and treatment he is receiving is further sufficient without a computer and internet ban to protect the public from any recidivism on the part of Mr. McMahon.

Finally, the primary purpose of supervised release is to support a defendant's transition into the community after the service of a prison term and provide

10

rehabilitation and supervision after release. *United States v. Johnson*, 529 U.S. 694, 709 (2000). Conditions that stand in the way of rehabilitation are antithetical to the purposes of sentencing and supervised release. *See United States v. Perazza-Mercado*, 553 F.3d 65, 71 (1st Cir. 2009). The Supreme Court has recognized that the internet can afford individuals convicted of crimes "legitimate benefits from these means for access to the world of ideas, in particular if they seek to reform and to pursue lawful and rewarding lives." *Packingham*, 582 U.S. at 108. The total ban that exists now deprives Mr. McMahon of access to this important world of ideas that can aid him in his efforts to rejoin society.

Perhaps most importantly, the ban has been a major obstacle to Mr. McMahon in attempting to seek a job and pursue education. The Supreme Court in *Packingham* described the internet even in 2017 as the "principal source" for checking job advertisements. *Id*. at 1737-38. Finding employment is a crucial step in rehabilitation. Employment's positive and common-sense impact on recidivism has been well documented. *See* "Expanding Economic Opportunity for Formerly Incarcerated Persons" Council of Economic Advisors, The White House (May 9, 2022) available at https://www.whitehouse.gov/cea/written-materials/2022/05/09/expanding-economic-opportunity-for-formerly-incarcerated-persons/. This is so much the case that the standard conditions of probation include maintaining employment as a requirement. USSG § 5D1.3(c)(7).

Mr. McMahon wants to work and has made every effort to find work. This includes utilizing the assistance of Mr. Ballesteros of the Vocational Rehabilitation

11

and Florida Department of Education. But most of the most appropriate potential jobs available are to be found in online advertisements. Worse still, most work requires use of the computer or the internet. One study conducted by the National Skills Coalition in partnership with the Atlanta Federal Reserve found that 92% of all jobs require the use of "digital" skills. Bergson-Shilcock, Roderick and Nye, "Closing the Digital Skill Divide: The Pay Off for Workers, Business and the Economy" National Skills Coalition, at 4 (Feb. 2023), available at https://nationalskillscoalition.org/wp-content/uploads/2023/02/NSC-DigitalDivide_report_Feb2023.pdf. Lifting the disability imposed on Mr. McMahon's internet and computer usage would advance his ability to participate in this key factor in his rehabilitation.

At this point, on the heels of two and a half successful years of supervision, the internet ban is an active drag on Mr. McMahon's continued rehabilitation. The condition is no longer reasonably related to the goals of protecting the public and deterrence, the nature of the offense or the characteristics of Mr. McMahon. It is a deprivation of Mr. McMahon's liberty that far outstrips any reasonable relation to the goals of 18 USC § 3583(d). It serves now only as a millstone around Mr. McMahon's neck, making it more difficult to find employment, pursue his education and fully reintegrate into society. Removing this condition of Mr. McMahon's supervised release is both the best way to keep the public safe and to help Mr. McMahon move forward with his life.

## CONCLUSION

Mr. McMahon is ready to take this next step towards his full rehabilitation. The condition preventing him from using the internet without first seeking the Court's permission is overly broad, violates the First Amendment and does not meet the requirements of 18 USC § 3583(d). The condition should be removed in its entirety as a greater deprivation of Mr. McMahon's First Amendment rights than is necessary to achieve the objectives of supervised release.

Respectfully submitted,

By:    /s/ Mary E. Maguire
            Counsel

Mary E. Maguire
Va. Bar No. 42505
Federal Public Defender
Western District of Virginia
401 E. Market Street, Ste. 106
Charlottesville. Va 22902
(540) 777-0895
Mary_Maguire@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

/s/ Mary E. Maguire
Mary E. Maguire